# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TERRY L. SHERMAN,

               Plaintiff,

     v.

KILOLO KIJAKAZI,

               Defendant.[1]

CIVIL ACTION NO. 3:21-CV-00717

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Terry L. Sherman ("Sherman")'s claims for a period of disability and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is respectfully recommended that the Commissioner's decision be affirmed and that final judgment be entered in favor of the Commissioner and against Sherman.

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND AND PROCEDURAL HISTORY**

On June 26, 2019, Plaintiff Sherman protectively filed an application for Title XVI benefits, alleging disability beginning February 22, 2019, due to depression, anxiety, paranoia features, and restless leg syndrome. (Doc. 15-5, at 5). The Social Security Administration ("SSA") initially denied Sherman's application on October 10, 2019, and upon reconsideration on December 18, 2019, prompting Sherman's request for a hearing, which Administrative Law Judge ("ALJ") Michele Stolls held on May 4, 2020. (Doc. 15-2, at 39-62). In a written opinion dated May 12, 2020, the ALJ determined that Sherman is not disabled and therefore not entitled to the benefits sought. (Doc. 15-2, at 14-34). On February 17, 2021, the Appeals Council denied Sherman's request for review. (Doc. 15-2, at 2).

On April, 18, 2021, Sherman filed the instant action. (Doc. 1). The Commissioner responded on August 24, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Sherman alleging four errors warranting reversal or remand. (Doc. 16; Doc. 23; Doc. 24).

II. **STANDARD OF REVIEW**

In order to receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his

or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[2] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.905(a).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f).

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Sherman is disabled, but whether the Commissioner's finding that Sherman is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been

held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III.   THE ALJ'S DECISION

In a decision dated May 12, 2020, the ALJ determined Sherman "has not been under a disability, as defined in the Social Security Act, since June 26, 2019, the date the application was filed." (Doc. 15-2, at 34). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920(a).

### A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974(a)(2). Here, the ALJ determined Sherman "has not engaged in [SGA] since June 26, 2019, the application date." (Doc. 15-2, at 20). Thus, the ALJ's analysis proceeded to step two.

### B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that are severe. 20 C.F.R. §

416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "obesity, migraine headache, major depressive disorder, social anxiety disorder, agoraphobia with panic, bipolar disorder, adjustment disorder, mild intellectual disorder, and specific learning disorder in reading and math." (Doc. 15-2, at 20). The ALJ also noted non-severe impairments of: hyperlipidemia, hip pain with sciatica-like symptoms, bilateral knee pain, and restless leg syndrome. (Doc. 15-2, at 20).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 416.920(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. The ALJ determined that none of Sherman's impairments, considered individually or in combination, met or equaled a Listing. (Doc. X). Specifically, the ALJ considered Listings 11.00, et seq. (neurological listings); 12.04 (depressive, bipolar and related disorders); 12.05 (intellectual disorders); 12.06 (anxiety and

obsessive-compulsive disorders); and 12.11 (neurodevelopmental disorders). (Doc. 15-2, at 21).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Sherman alleged that her impairments caused the following symptoms: paranoia, inability to go outside, and difficulty with walking, sitting, talking, and getting along with others. (Doc. 15-2, at 26). The ALJ found that while Sherman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Sherman's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 26). The ALJ then went on to detail Sherman's medical records and treatment history. (Doc. 15-2, at 26-33).

Considering all evidence in the record, the ALJ determined that Sherman had the RFC "to perform medium work as defined in 20 CFR 416.967(c)," subject to the following non-exertional limitations:

> [Sherman] is limited to occupations that require no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crouching, or crawling on ramps and stairs but must avoid occupations that require climbing on ladders, ropes, or scaffolds. She must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme dampness and humidity, as well as exposure to hazards such as dangerous machinery and unprotected heights. She must avoid exposure to occupations that present noise levels above level 3, which is moderate. She is limited to unskilled work activity as defined in the Dictionary of Occupational Titles that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. She is limited to occupations which require no more than occasional interaction with supervisors and coworkers and no interaction with members of the general public. She is limited to occupations which require no prolonged reading for the general public. She is limited to occupations which require no prolonged

reading for content and comprehension, or complex mathematical calculations such as cashier or teller work.

(Doc. 15-2, at 25).

E. STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant had, during the relevant period, the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 416.965. The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess,* 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that Sherman has no past relevant work. (Doc. 15-2, at 33). Thus, the ALJ proceeded to step five of the sequential analysis.

F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work.

20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Sherman was 52 years old on the alleged onset date, defined as an individual closely approaching advanced age by the Regulations. 20 C.F.R. § 416.963. (Doc. 15-2, at 33). The ALJ also noted that Sherman "has at least a high school education and is able to communicate in English" as considered in 20 C.F.R. § 416.964. (Doc. 15-2, at 33). The ALJ determined that upon consideration of these factors, Sherman's RFC, and the testimony of a vocational expert ("VE"), "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 15-2, at 33). The ALJ specifically identified occupations of loader stacker, and lacer, which are occupations with open positions ranging from 66,380 to 341,000 nationally and 1,100 to 2,630 in Pennsylvania. (Doc. 15-2, at 34). As a result of this analysis, the ALJ determined that Sherman is not disabled and denied Sherman's applications for benefits. (Doc. 15-2, at 34).

IV.    **DISCUSSION**

Sherman advances four main arguments on appeal. First, Sherman asserts "[t]he Commissioner under whom the ALJ issued the final decision served a longer term than the President and was removable only for cause, in violation of the separation of powers; therefore, the decision is constitutionally defective and should be reversed." (Doc. 16, at 6). Second, Sherman argues that the ALJ rejected the opinion of examining consultative psychologist, Jennifer Betts, Ph.D. ("Dr. Betts"), for erroneous reasons. (Doc. 16, at 8). Third, Sherman contends that the ALJ rejected the opinion of consultative psychologist, Charles

LaJeunesse, Ph.D. ("Dr. LaJeunesse"), for erroneous reasons. (Doc. 16, at 11). Fourth, Sherman avers that the ALJ failed to incorporate all of her limitations in the hypothetical question posed to the VE. (Doc. 16, at 13). In response, the Commissioner contends that the Court should affirm the decision because substantial evidence supports the ALJ's decision that Sherman is not disabled. (Doc. 23, at 2).

A. THE ALJ'S DECISION IS NOT PROCEDURALLY DEFECTIVE.

Sherman avers that the ALJ's decision is constitutionally defective and should be reversed by the Court because ALJ Stolls' delegation of authority to hear and decide Sherman's claim came from Commissioner Saul. (Doc. 16, at 7). Further, Sherman argues that "a presumably improper legal standard was utilized to adjudicate this disability claim at the administrative level" because ALJ Stolls "decided this case under regulations promulgated by [Commissioner] Saul when he had no constitutional authority to issue those rules." (Doc. 16, at 8). In opposition, the Commissioner asserts that the removal restriction of Section 902(a)(3) does not impact ALJ Stolls' appointment and that Sherman fails to show that any separation of powers violation actually caused her harm. (Doc. 23, at 14-15). The Commissioner further argues that "[t]he deciding ALJ served under a ratification of her appointment by an Acting Commissioner not subject to tenure protection. The removal restriction thus did not affect the ALJ's appointment." (Doc. 23, at 17).

In support of her argument, Sherman relies on the Supreme Court's decisions in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). (Doc. 16, at 6). In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. §

5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197. The following year, in *Collins v. Yellen*, the Court held a provision limiting the President to remove the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. 141 S. Ct. 1761, 1783 (2021) (holding that "Seila Law is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 42 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Here, Sherman argues that he was deprived of a valid administrative adjudicatory process because, under 42 U.S.C. § 405(b)(1), only the Commissioner of Social Security can make findings of fact and issue final decisions as to benefits eligibility. (Doc. 16, at 7). Specifically, Sherman argues that:

> The ALJ's delegation of authority to hear and decide [Sherman]'s claim came from Commissioner Saul and is therefore constitutionally defective. Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when he had no constitutional authority to issue those rules. Accordingly, a presumptively improper legal standard was utilized to adjudicate this disability claim at the administrative level.

(Doc. 16, at 8) (citations omitted).

- 11 -

In response, the Commissioner argues that Sherman's separation of powers argument fails because Sherman "cannot establish any nexus between the removal restriction and the appointment of the ALJ who denied her claim." (Doc. 23, at 17). The Commissioner avers that Commissioner Berryhill "was removable at will, refuting any suggestion of a nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and the ALJ's appointment." (Doc. 23, at 19-20).

First, the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). The ALJ who denied Sherman's disability claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. (Doc. 23, at 14). Rather, the ALJ was appointed by an Acting Commissioner of Social Security whom the President could remove at any time. (Doc. 23, at 15). Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because the ALJ was properly appointed, Sherman's argument is not persuasive in this case. *See Collins*, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections); *see also Boger v. Kijakazi*, No. 1:20-CV-00331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct.

28, 2021) (finding that "Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").[3]

Second, Sherman has not demonstrated that the unconstitutionality of 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9-10 (D. Or. Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal

---

[3] Other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the SSA. *See Dante v. Saul*, No. 20-CV-0702, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), *but see Collins*, 141 S. Ct. at 1783 (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away' " when discussing whether an acting director is a confirmed director) (quoting *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)).

provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by the plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Collins*, 141 S. Ct. at 1774. The Third Amendment was not subject to full judicial review and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *Collins*, 141 S. Ct. at 1785, 1789. Relief is available in removal challenges only where officials subject to the challenged removal restrictions cause the alleged injuries, and where those restrictions themselves caused "compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789.

By contrast, in this case, the action challenged by Sherman is the ALJ's decision denying benefits. (Doc. 15-2, at 34). Sherman has alleged no direct action by former Commissioner Andrew Saul and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Sherman cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on her specific claim. As the Commissioner points out in the brief in opposition, holding Sherman to a lower bar would provide her an "unwarranted remedial windfall," in which

many thousands of other disappointed claimants could receive the same relief. (Doc. 23, at 25). Further, Sherman has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to her. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is no allegation suggesting a direct nexus between the adjudication of Sherman's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Sherman's allegations merely express general dissatisfaction with the outcome of the adjudication of her Title XVI disability claim.

As the Commissioner notes, several constitutional remedial doctrines support the denial of Sherman's request for a rehearing. The harmless error doctrine dictates that retrospective relief is only appropriate where a statutory provision that violates the Constitution caused the plaintiff some harm. (Doc. 28, at 26). Here, because Sherman cannot show that the Commissioner's tenure protection affected the ALJ's decision on her claim, her request for rehearing is denied. Next, "[t]he de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Here, however, the Commissioner's appointment and the appointment of the presiding ALJ were entirely proper. To hold otherwise would risk unwinding untold thousands of disability determinations, endangering the efficient and orderly adjudication of benefits by the SSA and harming the interests of those

whose disability claims have yet to be adjudicated— precisely the type of "chaos" the de facto officer doctrine was designed to prevent. *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).

Lastly, the rule of necessity states that a judge must exercise adjudicatory responsibility over a matter, notwithstanding some defect in his or her title or authority, where all other judges share the same defect. *See Philadelphia v. Fox*, 64 Pa. 169, 185 (Pa. 1870). Here, it could not have been an error for the deciding ALJ to hear Sherman's disability claim. If the Commissioner's tenure protection somehow filters down to affect one ALJ within the entire SSA, it affects all such ALJs. To hold that the assigned ALJ should have declined to adjudicate Sherman's claim for that reason would have meant that all other ALJs must decline to adjudicate as well for the same reason. Such widespread action would have left Sherman without a forum to adjudicate her claim and it would have denied her even the opportunity to qualify for benefits.

Accordingly, Sherman has not alleged any connection between the unconstitutional limit on the Commissioner of Social Security's removal and the ALJ's decision denying Sherman's benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

B.  THE ALJ DID NOT ERR IN THEIR EVALUATION OF OPINION EVIDENCE

Next, Sherman argues that the ALJ erroneously rejected the opinions of Dr. Betts and Dr. LaJeunesse. (Doc. 16, at 8, 12). In response, the Commissioner contends that substantial

evidence supports the ALJ's evaluation of opinion evidence because the ALJ explained the factual and legal bases that led to her comprehensive RFC finding. (Doc. 23, at 34).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 416.046(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; see also Mullin v. Apfel, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." Black v. Berryhill, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Dr. Betts and Dr. LaJeunesse.

In Cotter v. Harris, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is

required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion…receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 416.927(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[4] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

---

[4] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the SSA. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 416.920c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §

---

other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

### 1. Dr. Betts

Seeking remand of the ALJ's unfavorable decision, Sherman argues that "the ALJ rejected all of Dr. Betts' findings based on her lay interpretation of the evidence, which she erroneously elevated over Dr. Betts' expert judgment." (Doc. 16, at 9; Doc. 24, at 4). Specifically, Sherman contends that the ALJ "failed to mention or consider [Sherman]'s hearing testimony that during one of her recent work attempts at Rite Aid, she was unable to perform her job because she became paranoid when customers were in the store and isolated herself in the restroom, leading to termination in a very short period of time." (Doc. 16, at 10). Furthermore, Sherman submits that the ALJ "erroneously assumed (based only on the ambiguous words 'see front') that Dr. Betts relied on [Sherman]'s self-report; to the contrary, Dr. Betts relied on her own objective findings and provided supporting explanations for her

opinions, and the ALJ erred in rejecting crucial portions of her opinion despite their supportability." (Doc. 24, at 3). Sherman contends that the ALJ err Sherman argues that had Dr. Betts' opinion been properly credited, the ALJ would have found her disabled. (Doc. 16, at 9). In opposition, the Commissioner argues that "[c]ontrary to [Sherman]'s assertion, the ALJ did not reject Dr. Bett[s'] opinion based on her 'lay interpretation' of the evidence nor did she overlook[ Sherman]'s testimony about her difficulty working at Rite-Aid and interacting with others." (Doc. 23, at 39). The Commissioner submits that "the ALJ was cognizant of [Sherman]'s complaints of paranoia and social anxiety," and "accounted for [Sherman]'s difficulties interacting with others in the workplace." (Doc. 23, at 39-40). Thus, the Commissioner avers that the ALJ thoroughly considered the opinion of Dr. Betts' and "appropriately found it only partially persuasive." (Doc. 23, at 41).

On August 30, 2019, Dr. Betts performed a mental status examination and completed a medical source statement of ability to do work-related activities (mental). (Doc. 15-7, at 35-42). Dr. Betts noted that Sherman had one psychiatric hospitalization in 2012 for depression, anxiety, and possible suicidal ideation. (Doc. 15-7, at 35). Since then, Sherman has been receiving treatment with Community Counseling Services for monthly medication management and therapy. (Doc. 15-7, at 35). Dr. Betts noted that Sherman reported her mood as anxious and that cognitive functioning was in the low average range. (Doc. 15-7, at 39). In addition, Dr. Betts stated that Sherman reported being able to dress, bathe, and groom herself independently; she and her boyfriend took turns doing household tasks; and she shopped with her boyfriend, managed money for the household, socialized with her boyfriend and two of her neighbors, and visited her mother regularly. (Doc. 15-7, at 39).

Upon examination, Dr. Betts opined that Sherman was cooperative and friendly, with an adequate manner of relating, social skills, and overall presentation. (Doc. 15-7, at 37). Dr. Betts opined that Sherman had satisfactory personal hygiene and grooming; normal motor behavior; appropriate eye contact; fluent, clear and adequate speech; coherent and goal-directed thought processes with no evidence of hallucinations, delusions or paranoia; a full range and appropriate affect; intact recent and remote memory skills; fair to good insight and judgment; and orientation to person, place, and time. (Doc. 15-7, at 37-38). Though Dr. Betts opined that Sherman had mildly impaired attention and concentration, Dr. Betts noted that Sherman became overwhelmed and did not attempt to complete serial 7's and when asked to complete serial 3's, she stated 20, 12, and 19. (Doc. 15-7, at 38). In conclusion, Dr. Betts diagnosed Sherman with social anxiety disorder, agoraphobia with panic, and bipolar I disorder, by history. (Doc. 15-7, at 39).

In the medical source statement of ability to do work-related activities (mental), Dr. Betts opined that Sherman had no limitations in understanding, remembering and carrying out simple instructions; mild limitations in making judgments on simple work-related decisions and understanding and remembering complex instructions; and moderate limitations in carrying out complex instructions and making judgments on complex work-related decisions. (Doc. 15-7, at 40). Dr. Betts noted that "social anxiety [and] agoraphobia make leaving the home and being in public difficult." (Doc. 15-7, at 40). In addition, Dr. Betts opined that Sherman had moderate limitations in interacting appropriately with the public and marked limitations in interacting appropriately with supervisors and co-workers. (Doc. 15-7, at 41). Lastly, Dr. Betts opined that Sherman had marked limitations in responding

appropriately to usual work situations and to changes in a routine work setting. (Doc. 15-7, at 41).

Reviewing the opinion of Dr. Betts, the ALJ found that the opinion is "partially persuasive." (Doc. 15-2, at 31). Specifically, the ALJ found that the opinion of Dr. Betts is "persuasive to the extent supported by and consistent with the evidence, for example, her ability to do simple work." (Doc. 15-2, at 31). However, the ALJ explained that the opinion of Dr. Betts "is not persuasive insofar as the overestimate regarding [Sherman]'s ability to interact with the public[,] the moderate limitations regarding the opinion of marked interaction with supervisors and coworkers, and responding to work situations and changes in routine, as it appears to rely on [Sherman]'s self-report by referencing to 'see front.'" (Doc. 15-2, at 31). Lastly, the ALJ found that the opinion of Dr. Betts is "inconsistent with [Sherman]'s report that she is good with authority." (Doc. 15-2, at 32).

Here, the ALJ properly considered the opinion of Dr. Betts in conjunction with the medical evidence of record and the relevant factors of supportability and consistency. *See* 20 C.F.R. § 416.920c(b)(2). Contrary to Sherman's assertion, the ALJ did not reject Dr. Betts' opinion based on her "lay opinion," nor did the ALJ overlook Sherman's testimony regarding her difficulties working at Rite-Aid and interacting with others. Indeed, the record demonstrates that the ALJ found the opinion of Dr. Betts "partially persuasive" because, while Dr. Betts' opinion is supported by and consistent with some medical evidence, such as Sherman's ability to do simple work, the opinion is not supported by or consistent with Dr. Betts' own findings and other medical evidence of record. (Doc. 15-2, at 31). For example, the ALJ explained that Dr. Betts' opinion "is not persuasive insofar as to the moderate limitations regarding the opinion of marked interaction with supervisors and coworkers,"

- 23 -

because that opinion is inconsistent with Sherman's self-report that she is good with authority figures. (Doc. 15-2, at 31-32).

Given the foregoing, the Court finds that the ALJ did not err in considering Dr. Betts' opinion and the findings of the ALJ are supported by substantial evidence.

### 2. Dr. LaJeunesse

Next, Sherman argues that the ALJ erroneously rejected the opinion of Dr. LaJeunesse because the opinion "was consistent with the evidence from the adjudicated period, including the examination of Dr. Betts and the treatment records." (Doc. 16, at 13). In addition, Sherman avers that "notwithstanding the ALJ's finding that the prior ALJ's decision was *res judicata*, she was not precluded by that finding from determining that Dr. LaJeunesse's report was consistent with the evidence from the period under review and thus persuasive." (Doc. 16, at 13; Doc. 24, at 6). In opposition, the Commissioner argues that the ALJ appropriately evaluated the opinion of Dr. LaJeunesse and "reasonably found Dr. LaJeunesse's opinion not persuasive, because it was not supported by his own examination of [Sherman], which noted no deficits in interaction." (Doc. 23, at 41-42). Furthermore, the Commissioner asserts that the ALJ appropriately applied *res judicata* where ALJ Balutis similarly found that the opinion of Dr. LaJeunesse was lacking in support. (Doc. 23, at 43).

On January 5, 2018, prior to Sherman's alleged onset date, Dr. LaJeunesse performed an independent psychological examination and completed a medical source statement of ability to do work-related activities (mental). (Doc. 15-7, at 167-173). Dr. LaJeunesse noted that Sherman reported being able to dress, bathe and groom herself, but that her boyfriend did most of the cooking and cleaning. (Doc. 15-7, at 169). Sherman also reported that she shared responsibilities with her boyfriend to do the laundry, shopping, and money

- 24 -

management, and socialized with her boyfriend and mother. (Doc. 15-7, at 169). Dr. LaJeunesse further opined that Sherman was cooperative, with an adequate manner of relating, social skills and overall presentation, and had appropriate eye contact. (Doc. 15-7, at 168). Dr. LaJeunesse opined that Sherman had impaired recent and remote memory skills, her intellectual functioning was below average, and her attention and concentration skills were not intact as Sherman could only count and do simple calculations. (Doc. 15-7, at 169). In conclusion, Dr. LaJeunesse diagnosed Sherman with mild intellectual disability, specific learning disorder in reading, comprehension, and math, bipolar I disorder, social anxiety disorder, panic disorder, agoraphobia, and adjustment disorder, with depression. (Doc. 15-7, at 169-70).

In the medical source statement of ability to do work-related activities (mental), Dr. LaJeunesse opined that Sherman had mild limitations in understanding, remembering and carrying out simple instructions, and in making judgments on simple work-related decisions. (Doc. 15-7, at 171). Dr. LaJeunesse further opined that Sherman had marked limitations in understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (Doc. 15-7, at 171). Dr. LaJeunesse noted that "[Sherman] is intellectually delayed." (Doc. 15-7, at 171). In addition, Dr. LaJeunesse opined that Sherman had extreme limitations in interacting appropriately with the public, supervisors and co-workers, and in responding appropriately to usual work situations and to changes in a routine work setting. (Doc. 15-7, at 172).

Upon review, the ALJ found that the opinion of Dr. LaJeunesse is "not persuasive." (Doc. 15-2, at 32). Specifically, the ALJ found that the opinion of Dr. LaJeunesse:

is not consistent with or supported by the medical evidence of record, including his own examination of [Sherman] noting to deficits in interaction. Likewise, marked and extreme limitations are not consistent with the totality of the evidence, including statements by [Sherman] which shows she is able to live alone, care for her personal needs independently, shop, do household chores, prepare meals and socialize. The longitudinal mental status examinations note no significant deficits that would support marked or extreme limitations.

(Doc. 15-2, at 32) (citations omitted).

In addition, the ALJ explained that because the examination by Dr. LaJeunesse was performed prior to Sherman's alleged onset date of disability, and during the *res judicata* period, the ALJ "agree[d] with the consideration given by [ALJ] Balutis in his prior unfavorable decision, noting slight persuasiveness, with lack of support from Dr. LaJeunesse's own examination, clearly relying on [Sherman]'s self-reported symptoms and overestimating the severity of her impairment."[5] (Doc. 15-2, at 32; Doc. 15-3, at 68). The ALJ further explained that "[a]lthough Judge Balutis found [Sherman] had some limitations in functioning, he did not agree with the severity opined by Dr. LaJeunesse." (Doc. 15-2, at 32).

Here, the ALJ properly considered the opinion of Dr. LaJeunesse in conjunction with the medical evidence of record and the relevant factors of supportability and consistency. *See* 20 C.F.R. § 416.920c(b)(2). In formulating Sherman's RFC, the ALJ did not necessarily reject the medical opinion of Dr. LaJeunesse, but found it "not persuasive" because it is "not

---

[5] The ALJ noted that Sherman has a history of filing multiple prior applications, including the most recent filing of a Title XVI application for SSI on September 30, 2017, alleging disability beginning April 30, 2016. (Doc. 15-2, at 18). On April 3, 2019, ALJ Daniel Balutis issued an unfavorable decision. (Doc. 15-2, at 18; Doc. 15-3, at 55). In the present action, the ALJ declined to reopen Sherman's prior Title XVI application because "there is no new and material evidence." (Doc. 15-2, at 18). The ALJ explained that "[a]s the matter has already been adjudicated and a final decision was made, [Sherman] is not able to continue to re-litigate issues already decided by the court." (Doc. 15-2, at 18). Therefore, the ALJ found that *res judicata* is applicable for the period of time through April 3, 2019, based on the unfavorable opinion by ALJ Balutis. (Doc. 15-2, at 18).

consistent with or supported by the medical evidence of record." (Doc. 15-2, at 32). The ALJ expressly articulated her findings on the supportability and consistency of the opinion of Dr. LaJeunesse, noting in particular that the "longitudinal mental status examinations note no significant deficits that would support marked or extreme limitations." (Doc. 15-2, at 32). Here, the Court finds that the ALJ considered the most important factors of consistency and supportability in determining the persuasiveness of Dr. LaJeunesse's opinion.

"We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Sherman simply asks the Court to reweigh the evidence, which the Court cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ). Accordingly, the Court finds that the ALJ's evaluation of the opinions of Dr. LaJeunesse and Dr. Betts is supported by substantial evidence and was reached based upon a correct application of the relevant law.

C. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S STEP FIVE FINDING THAT SHERMAN CAN PERFORM OTHER WORK.

Finally, Sherman argues that the ALJ failed to incorporate all of her limitations in the hypothetical question posed to the VE. (Doc. 16, at 13). Specifically, Sherman avers that "the hypothetical on which ALJ relied erroneously omitted the limitations assessed by Dr. Betts and Dr. LaJeunesse. Thus, the jobs to which the [VE] testified in response to the ALJ's hypothetical did not constitute substantial evidence of work which [Sherman] could perform." (Doc. 16, at 14; Doc. 24, at 7). In opposition, the Commissioner contends that

"[Sherman]'s complaint about the hypothetical question merely reiterates her dissatisfaction with the ALJ's RFC assessment." (Doc. 23, at 45). The Commissioner reiterates that "the ALJ appropriately evaluated the opinions by Dr. Betts and LaJeunesse and she crafted an RFC finding that sufficiently accounted for limitations that were credibly established by the medical evidence and other evidence of record." (Doc. 23, at 45). Therefore, the Commissioner argues that the hypothetical question the ALJ posed was not deficient and that "[t]he ALJ appropriately relied upon the VE's response to it to support her step five finding." (Doc. 23, at 14). In response, Sherman argues that the Commissioner "fails to recognize that the [VE] testified that each of the three marked limitations opined by Dr. Betts (interacting with coworkers, interacting with supervisors, and responding appropriately to changes) would preclude all work." (Doc. 24, at 7).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004) (the ALJ need only include in the hypothetical questions impairments that are supported by the record). Jobs listed by the VE are only representative examples—not an exhaustive list—of jobs that a claimant was capable of performing. *Rutherford*, 399 F.3d at 557. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

"A hypothetical question posed to the [VE] must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the

[VE]'s answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. The ALJ, however, is not required to submit to the [VE] every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the VE all of a claimant's *credibly established limitations*. *Rutherford*, 399 F.3d at 554 (quoting *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)) (emphasis in original).

At the administrative hearing, the ALJ posed two hypothetical questions to the VE. The first hypothetical question asked if any work is available to a person with Sherman's age, education, and background with the RFC to perform work that is no more than the medium exertional level, that would be limited to:

> occupations that require no more than frequent postural maneuvers such as balancing, stooping or kneeling crouching or crawling and climbing on ramps and stairs. But must avoid occupations that require climbing on ladders, ropes, and scaffolds. She must avoid concentrated prolonged exposure to fumes, odors, dusts, gasses, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme wetness and humidity or exposure to hazards such as dangerous machinery and unprotected heights. She must avoid exposure to occupations that present noise levels above level 3 which is moderate. She would be limited to unskilled work activities defined in the Dictionary of Occupational Titles that is low stress defined as only occasional decision-making required and only occasional changes in work setting. Further she would be limited to occupations which require no more than occasional interaction with supervisors and coworkers but no interaction with members of the general public. And she would be limited to occupations which require no prolonged reading for content and comprehension or complex mathematic calculations such as cashier or telework.

(Doc. 15-2, at 56-57).

In response, the VE provided three examples of representative jobs that are available in significant numbers in the national economy that Sherman would be able to perform with the

provided limitations, including loader, stacker, and lacer. (Doc. 15-2, at 58). Next, the ALJ's second hypothetical question asked if any work is available to a person with Sherman's age, education, and background with the RFC to perform work that is no more than the medium exertional level, "however her ability to work at that level is substantially reduced in that she'd have to be off task more than 30% of the workday due to chronic and severe anxiety and depression as well as from the learning disorder and as a side effect from medications." (Doc. 15-2, at 58). In response, the VE stated that "there would be no work for such a person." (Doc. 15-2, at 58-59).

The Court finds that the ALJ did not err at step five of the sequential analysis in relying upon the VE's responses to the hypothetical questions. The ALJ was not required to include all of the limitations assessed by Dr. Betts and Dr. LaJeunesse. The ALJ was only required to include all of Sherman's credibly established limitations. *See* Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 431. Further, as mentioned *supra*, the Court has found that the ALJ properly discounted the opinions of Dr. Betts and Dr. LaJeunesse. Therefore, because the Court finds that the ALJ's hypothetical questions posited to the VE adequately set forth all of Sherman's credibly established limitations, the Court finds that the ALJ committed no error as to this issue.

V.     CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Sherman disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Sherman. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: August 18, 2022**                          _s/ Karoline Mehalchick_
                                                     **KAROLINE MEHALCHICK**
                                                     **Chief United States Magistrate Judge**